# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **MARY E. JONES** | **CASE NO. 3:19-CV-00832** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 7] filed by defendants, City of Monroe and First Transit, Inc.  For reasons explained below, it is recommended that the motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART.

## Background

On June 27, 2019, Mary E. Jones filed the instant complaint for damages against her former employers, the City of Monroe (the "City") and First Transit, Inc. ("FTI").  Jones alleged that defendants discriminated against her because of her gender and retaliated against her because of complaints that she made against her managers.  The discrimination and retaliation culminated with Jones's March 15, 2018, termination from employment.

Jones alleged that on August 7, 2018, she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), wherein she set forth her allegations of gender discrimination and retaliation.  (Compl., ¶ 19).  On April 1, 2019, Jones received her right to sue notice, and filed the instant suit within 90 days thereafter.  (Compl.).  Plaintiff alleges violations of 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:332; the

Louisiana whistleblower statute, La. R.S. 23:967; the Louisiana labor investigation anti-discrimination statute, La. R.S. 23:964; and various rights under Article I of the Louisiana Constitution, including due process, § 2; property, § 4; and privacy, § 5.  *Id.*  Jones seeks damages for lost wages and mental anguish, reinstatement, back pay, lost benefits, punitive and exemplary damages, interest, attorney's fees, and costs.  *Id.*  She also prays for an order enjoining defendants from engaging in unlawful employment practices, and requiring them to take affirmative action to eliminate the effects of these practices.  *Id.*

On September 9, 2019, the City and FTI filed the instant motion to dismiss for failure to state a claim upon which relief can be granted, on the following grounds:

1) Jones' Section 1981 and Section 1983 claims, including her equal protection claim, are time-barred;

2) Jones' state-law tort claims, state-law constitutional claims, whistleblower statute (La. R.S. 23:967) claim, labor-investigation statute (La. R.S. 23:964) claim, and non-exhausted Louisiana Employment Discrimination Law ("LEDL") claims are prescribed;

3) Jones fails to state a claim under Section 1981 because that statute does not apply to gender discrimination;

4) Jones fails to state a claim under Title VII and the LEDL against First Transit, because Jones has not properly alleged that First Transit was her employer;

5) Jones fails to state a claim under Title VII, the LEDL, or the Equal Protection Clause, because she fails to plead facts establishing that sex was the reason for her termination or that there was discriminatory intent;

6) Jones fails to state a Title-VII retaliation claim, because she fails to plead facts indicating that she engaged in protected conduct that would give rise to a retaliation claim;

7) Jones fails to state a claim under the Louisiana whistleblower statute (La. R.S. 23:967), because she has not pleaded an actual violation of state law;

2

8) Jones fails to state a claim under the state labor-investigation statute (La. R.S. 23:964), because she has not alleged that she engaged in protected conduct and that statute does not provide a private right of action;

9) Jones fails to state a claim for punitive damages against the City of Monroe in full; and

10) Jones fails to state a claim for punitive damages under state law against First Transit.

(M/Dismiss).[1]

On September 30, 2019, plaintiff filed her opposition to the motion to dismiss in which she argued, *inter alia*, that 1) dismissal on the grounds of prescription is premature; 2) she need not make out a prima facie case for discrimination in her complaint; 3) the court should not consider the EEOC charge that defendants attached to their motion to dismiss; 4) whether or not FTI was her employer is an issue of fact that must be determined after discovery; and 5) whether a four year or one year limitations period attached to her § 1981 claim is an issue of fact that cannot be determined on the pleadings.  (Pl. Opp. Memo. [doc. # 10]).[2]

Defendants filed their reply brief on October 7, 2019.  Thus, the matter is ripe.

## Rule 12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).

---

[1] Defendants plainly seek dismissal of some claims on multiple grounds.  Here, however, where the court is able to find that a claim clearly is subject to dismissal on at least one basis, it does not reach the additional, redundant argument(s).

[2] The court notes that plaintiff failed to respond to many of defendants' arguments.  However, the court cannot grant a motion to dismiss solely because the plaintiff failed to oppose the motion.  *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir.2012) (citation omitted).

3

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.[3] Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

---

[3] **Error! Main Document Only.**In her opposition memorandum, plaintiff cited a case(s) that invoked the oft-cited language from *Conley v. Gibson*, that a court will not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957). In *Twombly*, however, the Supreme Court clarified that *Conley* merely "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly, supra*.

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).  Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).  In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).  Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

**Plaintiff's Allegations**

Jones worked as a bus driver for the City, off and on, for nineteen years, until the City terminated her employment on March 15, 2018, for purported safety violations. (Compl., ¶¶ 2, 6). Jones alleged that in the three years preceding her discharge, she was subjected to "a continuous pattern of harassment, stalking, inquiries to friends about her private conversations, and yelling by her managers, who manipulated schedules and altered rules to intentionally frustrate Plaintiff and terminate her employment." *Id*., ¶ 7. Jones contends that her work was closely scrutinized by her managers to find "minor mistakes," which were used to reprimand her, thus leading to her termination. *Id*., ¶ 9. Jones asserted that "more severe and egregious mistakes" by male employees "did not lead to their termination." *Id*., ¶ 10.

Jones further asserted that, although she made complaints to the defendants, only "superficial" investigations were performed, which found no violations by the managers, and the improper conduct continued. *Id*., ¶ 11. After Jones made her complaints, she stated that the "harassment escalated," and included anonymous, threatening calls to her home, the denial of leave, and reduced overtime opportunities. *Id*., ¶ 12. Jones contends that an effort to terminate her in October 2017 for an unexcused absence was "thwarted because [Jones] had taken a photograph of the posted schedule showing her days off." *Id*., ¶ 13. After her exoneration, management created a new rule to prohibit employees from bringing telephones on the premises. *Id*., ¶ 14.

In her EEOC charge, plaintiff declared under penalty of perjury that she had been employed with "Monroe Transit Management" as a bus operator from 1999 until her March 15,

2018, discharge from employment.  (Charge of Discrimination; M/Dismiss, Exh.).[4]  She checked the boxes indicating that her discrimination charge was based on sex and retaliation.  *Id*. Furthermore, the earliest date that the discrimination began was on March 10, 2018, and the latest was March 15, 2018.  *Id*.  She did not check the box for a continuing action.  *Id*.  Jones alleged that she purportedly was discharged for a "Category 6 violation" after the general manager Marc Keenan stalked her and eavesdropped on a conversation that she was having with a co-worker in which she jokingly used a curse word.  *Id*.  Jones believed that

> [she] was discharged because of [her] sex, Female, and retaliation for the numerous complaints [she] made against [her] employer in violation of Title VII of the Civil Rights Act, as amended.  Several Male employees who committed more egregious offenses were not discharged.  Specifically, Willie Newton (Male) used vulgarity over the radio on a regular basis, Riley Smith got a DWI (was placed in a painting position in lieu of termination) and was returned to the Bus Operator position one year later, Gerald Shaw physically assaulted an employee with special needs, etc.

*Id*.

---

[4] Plaintiff objects to defendants' introduction, and the court's consideration of her EEOC charge because she neither attached, nor incorporated the charge to her complaint.  The court reiterates, however, that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Collins, supra.*  Here, plaintiff stated that she filed a charge with the EEOC in her complaint. Moreover, the charge is central to her claim because she is required to exhaust administrative remedies before filing suit.  *See Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir.2013) (plaintiff's two EEOC Charges—were referenced in her complaint and are central to her claim; therefore, they were properly before the court at the motion to dismiss stage).

Citing 42 U.S.C. § 2000e-5(**a**) plaintiff further argues that the EEOC charge is not a public record, cannot be disclosed to the public, and cannot be used as evidence in a subsequent proceeding without the parties' written consent.  Upon review, however, it is manifest that the applicable provision is triggered only after the EEOC determines that there is reasonable cause to believe that the charge is true and then, only to things that are said or done during the agency's "informal endeavors" to redress the unlawful employment practice.  42 U.S.C. § 2000e-5(**b**). There is no indication that the foregoing circumstance is present here.  Plaintiff's objection is overruled.

## Analysis

As the instant case acutely illustrates, an employee who believes that she has been subjected to unlawful or discriminatory employment practices may seek redress via multiple, often overlapping, avenues of relief under both federal and state law. The difficulty, however, is that the statutes are not coextensive. Indeed, Title VII has an administrative prerequisite to suit that results in disparate limitations and tolling provisions. Consequently, if an employee waits to file suit until after she has complied with Title VII's administrative process, she may end up forfeiting her ability to assert claims for relief under other laws that require earlier judicial presentment. The instant suit epitomizes that dilemma.

I.      **No Cause of Action**

a)      <u>42 U.S.C. § 1981</u>

Section 1981 provides, in pertinent part, that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."[5] *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60; 95 S.Ct. 1716, 1720 (1975). However, "sex discrimination is not cognizable under § 1981." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 345 (5th Cir.1981); *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx.

---

[5] Section 1981, however, does not provide a separate cause of action against local government entities. *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir.2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702 (1989)). Instead, violations of civil rights under § 1981 must be asserted against state actors under § 1983. *Id.*

485, 491 n.4 (5th Cir.2011) (citations omitted).  Further, although a retaliation claim is cognizable under § 1981, it only provides protection from retaliation for reasons related to the enforcement of the underlying statutory right, i.e., discrimination on the basis of race.  *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442; 128 S.Ct. 1951 (2008); *McDill v. Bd. of Padrons & Paroles*, No. 18-0597 2019 WL 191651, at *2 (M.D. Ala. Jan. 14, 2019) (citations omitted).

Here, plaintiff's complaint does not include any allegations of discrimination on the basis of race or in retaliation for opposing race discrimination.  Accordingly, she does not state a claim for relief under § 1981.

      b)      <u>Louisiana Labor Investigation Anti-Discrimination Statute</u>

Louisiana Revised Statute § 23:964 provides that "[n]o employer shall discharge or in any other manner discriminate against any employee because such employee has testified or furnished any other information in any investigation or proceeding relative to the enforcement of any of the labor laws of this state."  La. R.S. § 23:964(a).  In this case, however, plaintiff did not allege facts to show that she falls within the purview of the statute.  Indeed, she initiated her EEOC charge/investigation after she no longer was employed by defendants.  Therefore, the submission of her EEOC charge could not provide the basis for any claim under § 23:964 against defendants.

Furthermore, § 23:964 does not accord a private cause of action for any violation of its provisions.  Rather, it provides remedies in the nature of criminal and civil penalties, with the civil penalties to be enforced by the assistant secretary of the office of workforce development.  La. R.S. § 23:964.  Given that the Louisiana legislature is well aware of how to create a private cause of action when it is so inclined, the conspicuous absence of one in § 23:964 impels the

conclusion that the legislature did not intend one in this instance. *See e.g., Monier v. St. Charles Par. Sch. Bd.*, 65 So.3d 731, 735 (La. App. 5th Cir. 2011) (no private cause of action under Teacher Bill of Rights because legislature did not provide for a remedy for any violation of the rights afforded under the law).

## II.    Time-Barred Claims

Statutes of limitations serve as absolute bars to suit. *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir.2012). Although limitations is an affirmative defense, a district court is authorized to dismiss a case (even *sua sponte*) when "it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir.2006) (citation omitted).[6] Therefore, when, as here, it appears that the claims have prescribed on the face of the complaint, it devolves upon plaintiff to establish facts which would have the effect of interrupting or avoiding prescription. *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

a)    § 1983

There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). Therefore, § 1983 borrows the forum state's general personal injury limitations. *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir.1999) (citing *Owens v. Okure,* 488 U.S. 235, 243-48 (1989)) (§ 1983).[7] In Louisiana,

---

[6] "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir.2014) (citation omitted).

[7] **Error! Main Document Only.**The courts must borrow the forum state's limitations period for personal injuries, including the state's provisions on tolling – so long as application of the rules does not undermine the goals of the federal statute at issue. *Jackson, supra* (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989) (citation omitted).

delictual actions are subject to a liberative prescription period of one year. La. Civ. Code Art. 3492. Thus, "[i]n Louisiana, the applicable section 1983 limitation is one year." *Mejia, supra* (citing *inter alia*, Louisiana Civ. Code Ann. art. 3492).

Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises. *Jackson, supra* (citation omitted). "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action." *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)). Furthermore, "[t]he continuing violation doctrine is a federal common law doctrine governing accrual." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir.2017), *as revised* (Mar. 13, 2017). To apply, however, the doctrine requires, *inter alia*, that at least some of the continuous conduct occur within the limitations period. *Id.*

Here, plaintiff alleged that she was discharged from employment on or about March 15, 2018. However, she did not file the instant suit until more than one year later on June 27, 2019. Therefore, her claims under § 1983 are time-barred on their face. Further,

> [i]t is . . . well settled that the fact that an individual filed a charge of discrimination with the EEOC, even if within the period allowed by the statute of limitations for the filing of such charges, does not toll the statute as it applies to claims arising under 42 U.S.C. § 1981 or § 1983."

*Farmer v. Mouton*, No. 16-16459, 2018 WL 1123573, at *17 (E.D. La. Feb. 28, 2018) (citations omitted).

Finally, because defendants' alleged discriminatory conduct ceased no later than the date of plaintiff's discharge from employment, i.e., more than one year before she filed suit, the continuing violation doctrine proves unavailing.

      b)    <u>State Whistleblower and State Constitutional Claims</u>

The Louisiana Civil Code provides that prescription runs against all persons, including

absent persons and incompetents, unless exception is established by legislation.  La. Civ. Code Art. 3467-3468.  Under Louisiana law, "[w]hen tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated."  *Williams v. Otis Elevator Co.*, 557 Fed. Appx. 299, 301 (5th Cir.2014) (citations omitted).  For the continuing tort doctrine to apply, the *operating cause* of the injury must be continuous.  *Id.*

The Louisiana whistleblower statute does not include a prescriptive period; consequently, Louisiana courts apply Article 3492's one year liberative prescription period.  *Williams, supra* (citations omitted).  Moreover, there is no tolling provision for a whistleblower claim during the pendency of an administrative investigation.  *Williams, supra* (citations omitted).  Further, when discerning the basis to support a damages remedy for a constitutional violation under Louisiana law, the Louisiana Supreme Court grounded the claim upon the fountainhead of Louisiana tort law, Article 2315.  *See Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1092–93 (La.1990).  Likewise, courts have construed employment discrimination claims under Louisiana law as tort claims that are governed by Article 3492's one year prescriptive period. *Jay v. Int'l Salt Co.*, 868 F.2d 179, 180 (5th Cir.1989).  Here, plaintiff's constitutional claims derive from employment-based discrimination and retaliation, and therefore, are subject to Louisiana's one-year prescriptive period for torts.[8]

Once again, Jones alleged that the date that she was discharged from employment, and therefore, the latest date that defendants' conduct abated was on or about March 15, 2018.

---

[8] Insofar as plaintiff characterizes her state constitution claim as an invasion of privacy claim, see Compl., ¶ 8, it still is subject to a one-year prescriptive period, running from the date that the invasion occurred.  *Vandenweghe v. Jefferson Par.*, No. 11-2128, 2012 WL 1825300, at *7 (E.D. La. May 18, 2012).

12

However, she did not file the instant suit until more than one year later.  Accordingly, her claims under the whistleblower statute and the Louisiana Constitution are time-barred.

### III.  Title VII and LEDL

   a)    Employer

Defendants contend that plaintiff did not allege sufficient facts to show that FTI was her employer under Title VII or the LEDL.[9]  To qualify as an employer under Title VII, two conditions must be met:  1) the defendant must fall within the statutory definition; and 2) there must be an employment relationship between the plaintiff and the defendant.  *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118 n2 (5th Cir.1993) (citation omitted).  To meet the definition of an employer under the LEDL, one must "(1) receive services from an employee and in return give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute."  *Johnson v. Hosp. Corp. of Am.*, 767 F.Supp.2d 678, 693 (W.D. La. 2011) (citing La. R.S. § 23:302(2)).

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . ."  *Muhammad v. Dallas County Community Supervision and Corrections Dept.*, 479 F.3d 377, 380 (5th Cir.2007) (citing 42 U.S.C. § 2000e(b)).  The LEDL, however, applies only to employers who employ twenty or more employees.  La. R.S. § 23:302(2).  Here, plaintiff alleged that FTI employed "more than 15 persons."  (Compl., ¶ 4).  Whilst that allegation suffices to meet the statutory requirement for Title VII, it is insufficient to establish coverage under the LEDL.  Accordingly, plaintiff fails to state a claim for relief against FTI under the LEDL.  Therefore, the court will

---

[9] Although plaintiff made the same "employer" allegations against both defendants, the City concedes that it is her employer for purposes of Title VII and state law.  (Defs. Opp. Memo., pg. 9).

proceed to the second step of the Title VII inquiry only, i.e., "whether an employment relationship exists between the plaintiff and the defendant." *Muhammad, supra*.

To determine whether an employment relationship exists under Title VII, the courts apply a "hybrid economic realities/common law control test," with the most important consideration being the "right to control [the] employee's conduct." *Muhammad, supra* (citations and internal quotation marks omitted). The control component focuses upon whether the would-be employer has the right to "hire, fire, supervise, and set the work schedule of the employee." *Id*. "The economic realities component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id*.

In this case, Jones alleged that FTI provided "management services" for the City. (Compl., ¶ 4). She also named "Monroe Transit Management" as her employer in her EEOC charge, which, according to the caption of her complaint, is the name under which FTI does business. *See* Charge and Compl. Of course, plaintiff alleged in her EEOC charge that Monroe Transit Management terminated her employment. *See* EEOC Charge. This allegation suggests that FTI, doing business as Monroe Transit Management, had the right or ability to fire plaintiff.

Furthermore, the "hybrid economic realities/common law control test" is a fact-specific inquiry and therefore is "typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship." *Muhammad, supra*. Many of the relevant facts likely are not known by plaintiff until after discovery. Accordingly, at this stage of the proceedings, the court is persuaded that plaintiff has alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support a finding that FTI was her employer under Title VII.

14

b)     <u>Hostile Work Environment</u>

Plaintiff's complaint does not allege a hostile work environment claim per se.  However, insofar as plaintiff's allegations may potentially support such a claim, defendants seek dismissal of the claim for failure to exhaust administrative remedies.

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  *Taylor v. Books A Million, Inc*. 296 F.3d 376, 378 -379 (5th Cir. 2002); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir.1996).  A Title VII plaintiff exhausts administrative remedies when she files a timely charge with the EEOC and receives a statutory notice of right to sue.  *Id.*  In a "deferral state" such as Louisiana,[10] the Title VII plaintiff must file a charge of discrimination with the EEOC within 30 days after receiving notice that the state or local agency has terminated proceedings or within 300 days of the alleged discriminatory employment action, whichever is earlier.  42 U.S.C. § 2000e-5(e)(1); *Burrell v. Brown,* 2000 WL 1056312, *3 (5th Cir. 2000) (unpubl.); *Janmeja v. Board of Supervisors of Louisiana State University,* 96 Fed. Appx. 212, 214 (5th Cir. 2004).[11]

Once the plaintiff has exhausted administrative remedies by presenting her claim to the

---

[10] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir.1988). The Louisiana Commission on Human Rights has been funded and operating since April 1994, making Louisiana a deferral state since that time.  La. R.S. § 51:2233; G. Guidry, *Employment Discrimination Claims in Louisiana,* 45 La. B.J. 240, 241 (Oct.1997); G. Huffman, *The Louisiana Commission on Human Rights--Now It's for Real,* Briefly Speaking, Spring 1995, at 4 (New Orleans Bar Ass'n)." *Singleton v. RPM Pizza, Inc.,* 2004 WL 2216530, *3, n.1 (E.D. La. 2004).

[11] Defendants also seek dismissal of any claims for any intentional discrimination or retaliation claims that stem from incidents that occurred more than 300 days prior to the date that plaintiff filed her EEOC charge.  However, without further details regarding when these speculative events occurred or whether they are related to other timely-raised incidents, the court cannot conclude that they are time-barred.

EEOC and received a right to sue letter, she must file suit in federal court within 90 days of receipt of the EEOC's notice of the right to sue.  42 U.S.C. § 2000e-5(f)(1).  The failure to exhaust administrative remedies or to file suit in federal court in a timely manner renders the Title VII case subject to dismissal.  *See Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979) (complaint that fails to allege or excuse exhaustion of administrative remedies is subject to dismissal).[12]

Defendants do not contest that Jones timely filed an EEOC charge as to her claims for discrimination and retaliation; rather, they contend that she failed to exhaust the administrative process with respect to any hostile work environment claim.  In other words, they question whether a hostile work environment claim reasonably might grow out of the allegations contained in her EEOC charge.  In *McClain v. Lufkin Indus., Inc*, the Fifth Circuit encapsulated Title VII's exhaustion requirement as follows,

> Title VII requires employees to exhaust their administrative remedies before seeking judicial relief.  Private sector employees must satisfy this requirement by filing an administrative charge with the EEOC.  The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer.  Only after administrative efforts terminate may the employee sue the employer in federal court.

> Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement.  On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship."  On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment

---

[12] Title VII's charge-filing requirement is not jurisdictional.  *Fort Bend Cty., Texas v. Davis*, U.S. ___, 139 S.Ct. 1843, 1850 (2019).  Therefore, the issue may be raised and addressed within the context of a Rule 12(b)(6) motion.

discrimination claims." To reconcile these policies, th[e] [Fifth Circuit] construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." [The courts] use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.2008) (internal citations omitted).

Therefore, although the actual scope of an EEOC investigation does not determine whether a claim is exhausted, the investigation of a particular claim creates a strong inference that such a claim was presented. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir.1994).

In her formal Charge of Discrimination, Jones checked the boxes for discrimination on the bases of sex and retaliation. (Charge of Discrimination). According to the form, the earliest date that discrimination occurred was March 10, 2018, and the latest date was March 15, 2018. *Id*. Moreover, there was no mention of incidents of harassment that were so severe or pervasive that they altered the conditions of employment and created an abusive working environment. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330–31 (5th Cir.2009).

Accordingly, the court is not persuaded that any potential claim for hostile work environment reasonably could be expected to have grown out of the sparse allegations in plaintiff's charge for discrimination and retaliation.[13] Therefore, the undersigned concludes that

---

[13] *See Walton v. Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 570 (5th Cir.2012) (hostile-work-environment claim could not "reasonably be expected to grow out of" EEOC charge alleging that employer discharged employee in retaliation for complaining about protected activity based on age); *Turner v. Novartis Pharm. Corp.*, 442 Fed. Appx. 139, 141 (5th Cir.2011) (EEOC charges alleging discrimination and retaliation do not reasonably encompass hostile work environment claim); *Williams v. E.I. du Pont de Nemours & Co.*, Civ. Action No. 14-382, 2015 WL 9581824, at *9 (M.D. La. Dec. 30, 2015) (hostile work environment claim did not reasonably grow out of EEOC charge alleging discrimination and retaliation).

plaintiff's Title VII claim for hostile work environment is subject to dismissal for failure to exhaust EEOC remedies. The LEDL, however, does not include an exhaustion requirement. *Walton-Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 570 (5th Cir.2012). Thus, plaintiff's hostile work environment claim under the LEDL is not subject to dismissal on that basis. Nonetheless, any hostile work environment claim under the LEDL is time-barred because plaintiff did not file suit within one year after the conduct occurred/abated. *See* La. R. S. § 23:303(D) (one-year prescriptive period).[14]

c)     Retaliation

Defendants argue that plaintiff did not allege sufficient facts to state a retaliation claim under Title VII.[15] To withstand a Rule 12(b)(6) motion, a plaintiff alleging Title VII retaliation must plead facts showing: "(1) that [she] engaged in [protected] activity . . ., (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 Fed. Appx. 707, 709 (5th Cir.2016) (internal quotation marks omitted). An employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment

---

[14] Although the LEDL suspends its one-year prescription period for up to six months during any investigation by the EEOC of the claim at issue, *see* La. R.S. § 23:303(D), the suspension does not apply to any claim that could not reasonably be expected to grow out of the EEOC charge, e.g., the hostile work environment claim at issue here. *See Walton-Lentz, supra*.

[15] Before 2014, the LEDL did not include an anti-retaliation provision applicable to discrimination stemming from race, color, religion, sex and national origin. *Martin v. Winn-Dixie Louisiana, Inc.*, 3:13-CV-00682-JWD, 2015 WL 1281943, at *7 (M.D. La. Mar. 20, 2015) (citing S*mith v. Parish of Washington*, 318 F.Supp.2d 366, 373 (E.D.La.2004). In 2014, the legislature amended Louisiana Revised Statute § 51:2256 to extend retaliation protection to the aforementioned categories. *Martin, supra*. By its terms, however, § 51:2256 prohibits only a *conspiracy* to retaliate. *Johnson v. JP Morgan Chase Bank, N.A.*, 293 F.Supp.3d 600, 615 (W.D. La.2018) (James, J.). Here, plaintiff's complaint does not include facts to support a conspiracy.

practice by Title VII or (2) if she made a charge, testified, assisted, or participated in any manner

in an investigation, proceeding, or hearing under Title VII." *Hernandez v. Yellow Transp., Inc.,*

*670 F.3d 644, 657 (5th Cir.2012)* (citation and internal quotation marks omitted).

Jones alleged that she made unspecified complaints to defendants. (Compl., ¶ 12). In

addition, she alleged that defendants retaliated against her for "exercising her right to demand

equal treatment under the law." (Compl., ¶ 16). Plaintiff, however, did not identify or detail the

complaints that she made to defendants. Moreover, her latter statement is conclusory. The Fifth

Circuit has recognized that "[a]n employee's complaint to her employer that is vague, without

any reference to an unlawful employment practice under Title VII, does not constitute protected

activity." *Jenkins v. Louisiana Workforce Comm'n*, 713 Fed. Appx. 242, 246 (5th Cir.2017)

(citations and internal quotation marks omitted). Because plaintiff did not plead facts to raise the

plausible inference that she engaged in protected activity, the court finds that she does not state a

claim for retaliation under Title VII. *See Jenkins, supra.*

d)    Discrimination

Defendants also contend that plaintiff did not allege facts to support a discrimination

claim under Title VII or the LEDL.[16] Although plaintiff does not have to submit evidence to

establish a prima facie case of discrimination at the pleading stage, she must plead facts as to all

of the elements of her discrimination claim sufficient to render the claim plausible. *Chhim v.*

*Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir.2016) (citations omitted). Accordingly, it

can prove "helpful to reference the *McDonnell Douglas* framework," upon which plaintiff

ultimately must rely if, as suggested here, her claim is based upon circumstantial evidence. *Id.*

---

[16] Because the LEDL is "substantively similar" to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance, the outcome of plaintiff's discrimination claim is the same under the federal and state statutes. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

19

To establish a prima facie case of gender discrimination under Title VII, the plaintiff must show "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir.2007) (citation omitted).

Plaintiff's complaint reveals that she is female, and therefore, a member of a protected group. *See* Compl. Moreover, she worked for defendants as a bus driver for 19 years, which suggests that she was qualified for her job. *Id.* Furthermore, she was terminated from employment, which suffices to meet the adverse employment action requirement. *Id.* Finally, she alleged in conclusory fashion that "more severe and egregious mistakes made by male employees did not lead to termination of their employment." (Compl., ¶ 10). While the foregoing allegation is conclusory, plaintiff alleged additional details in her EEOC charge, which defendants concede the court may consider for purposes of the instant motion.

In her charge, plaintiff identified three male individuals who were not discharged, despite similar or more egregious infractions. *See* EEOC Charge. Moreover, at least one of the males was a bus operator -- as was plaintiff. *Id.* The court finds that the foregoing allegations suffice to identify a plausibly similarly situated comparator who was treated more favorably than plaintiff.[17] Indeed, plaintiff's allegations are no less fact-intensive or detailed than those set forth in *Wooten v. McDonald Transit Associates, Inc.*, which the Fifth Circuit found sufficient to

---

[17] In support of their motion, defendants rely on *Whitlock v. Lazer Spot, Inc.*, 657 Fed. Appx. 284, 287 (5th Cir.2016). In *Whitlock*, however, plaintiff did not specify the comparators' work violations or identify their positions with the defendant employer. *Id.*

satisfy Rule 8's low threshold.  *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).[18]  *Wooten* supports the same outcome here.

    e)    <u>Punitive and Exemplary Damages</u>

It is manifest that plaintiff cannot recover punitive damages against the City under Title VII because Title VII plaintiffs may not recover punitive damages against governments, government agencies, and political subdivisions.  *Oden v. Oktibbeha Cty., Miss.,* 246 F.3d 458, 466 (5th Cir.2001).  Furthermore, although plaintiff failed to state viable claims for relief under 42 U.S.C. §§ 1981 and 1983, *see* discussion, *supra*, even if she had, punitive damages are not available under those provisions against a municipality/local government entity.  *Knox v. City of Monroe*, No. 07-606, 2009 WL 936965, at *1 (W.D. La. Apr. 6, 2009) (citations omitted).

Finally, punitive or exemplary damages are not allowable under Louisiana law against any defendant unless expressly provided for by statute.  *Albert v. Farm Bureau Insurance Company*, 940 So. 2d 620, 622 (La. 2006).  "In the absence of such a specific statutory provision, only compensatory damages may be recovered."  *Evans v. Vill. of Creola*, No. 18-0983, 2019 WL 639174, at *4 (W.D. La. Jan. 22, 2019), R&R adopted, 2019 WL 639162 (W.D. La. Feb. 14, 2019).  Here, the LEDL only provides for "compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs."  La. R. S. § 23:303(A).  In fact, "Louisiana law authorizes punitive damages in relation to only three acts: child pornography, driving while intoxicated, and criminal sexual activity during

---

[18] In *Wooten*, plaintiff alleged that he had been employed by defendant for approximately 12 years; that one year before he was fired, he filed a charge with the EEOC; thereafter, his employer "discriminated and retaliated against [him], and created a hostile work environment, until such time that [he] was constructively discharged . . . "; and that he suffered resulting harm. *Wooten*, 788 F.3d at 498.

childhood." *Hunter v. Jefferson Par. Pub. Sch. Sys.*, No. 17-2015, 2017 WL 2910992, at *10 (E.D. La. July 7, 2017) (citations omitted). Those circumstances are not present here.

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the generous dose of conclusory allegations set forth in plaintiff's complaint. *See Iqbal, supra.* Plaintiff's remaining allegations contain facts sufficient to confer plausibility only upon her claim for discrimination against: 1) the City under Title VII and the LEDL; and 2) FTI under Title VII.

Nonetheless, the court is obliged to "freely" grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that plaintiff can cure one or more aspects of her deficient pleading via amendment. Accordingly, the instant recommendation of dismissal is subject to plaintiff's opportunity to seek leave of court to amend her complaint *with a proposed pleading* that cures the deficient allegations – within the deadline to file objections to this report and recommendation.[19]

In the interim, and in the absence of a curative amendment,

---

[19] Because the recommended resolution of the instant motion disposes of less than all claims and parties, it is not a final judgment and therefore, remains subject to revision at any time before conclusion of the case. Fed.R.Civ.P. 54(b). Consequently, if plaintiff **Error! Main Document Only.**uncovers facts sufficient to support a dismissed claim, then she may seek leave to amend her complaint to assert the claim. **Error! Main Document Only.**It goes without saying, however, that plaintiff may not dither in her efforts.

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 7] filed by defendants, City of Monroe and First Transit, Inc. be GRANTED-IN-PART, and that the following claims be DISMISSED, WITH PREJUDICE:

 1) Plaintiff's claims against both defendants under 42 U.S.C. §§ 1981 and 1983; the Louisiana whistleblower statute, La. R.S. 23:967; the Louisiana labor investigation anti-discrimination statute, La. R.S. 23:964; various violations of rights protected under Article I of the Louisiana Constitution, including due process, § 2; property, § 4; and privacy, § 5; and any claim for hostile work environment and retaliation under Title VII and the LEDL.

 2) Plaintiff's claims for punitive and/or exemplary damages under federal and state law against the City; and

 3) Plaintiff's claims against FTI under the LEDL, plus her claim for punitive or exemplary damages against FTI under state law only.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss [doc. # 7] otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING

ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL

CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

    In Chambers, at Monroe, Louisiana, this 8th day of October 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE