UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MARY E. JONES | CASE NO. 3:19-CV-00832 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CITY OF MONROE AND FIRST TRANSIT, INC. | MAG. JUDGE KAYLA D. MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a Motion to Strike [Doc. No. 40] filed by Plaintiff Mary E. Jones ("Jones") and a Motion for Summary Judgment [Doc. No. 35] filed by Defendants City of Monroe ("City") and First Transit, Inc. ("First Transit").

For the reasons set forth herein, the Motion to Strike is DENIED, and the Motion for Summary Judgment is GRANTED.

**I.   BACKGROUND**

On June 27, 2019, Jones filed suit against defendants alleging that her March 26, 2018 termination violated state and federal laws. Many of Jones' original claims were dismissed as a result of a Report and Recommendation [Doc. No. 12], which was adopted by this Court [Doc. No. 15] on October 24, 2019.

Therefore, Jones' only remaining claims are her sex discrimination claims under Title VII against the City and First Transit, and Jones' claim against the City under the Louisiana Employment Discrimination Law ("LEDL") La. R.S. 23:332.

Jones was hired by the City in 1999 as a Bus Operator in the City's Transit Division. As an employee, Jones was subject to the Employee Work Rules and Code of Discipline [Doc. No. 35-10]. She was also a member of the Union and covered by a Collective Bargaining Agreement

1

("CBA") [Doc. No. 35-9] that contained a "grievance procedure" and, which included procedures for disciplinary processes.

In December 2009, Jones was disciplined for a Category VI violation for "personal conduct" for a confrontation with another employee, and for using profane language. Jones was given a warning on this occasion [Doc. No. 35-4 page 81].

In January 2010, Jones received a five-day suspension after she was involved in an argument that escalated to yelling in front of passengers, involving passengers, and that Jones was using profanity at the Operations Center [Doc. No. 35-4 page 82].

Jones also received a four-day suspension in April 2011, for nudging a supervisor, who had directed her to stop, with her bus. She was written up for failing to follow instructions from a supervisor and for discussing Monroe Transit Systems business with the public.

In September 2012, Jones was accused of personal misconduct for raising her voice at supervisors in front of passengers [Doc. No. 35-4 pages 97-100]. Shortly thereafter, Jones was terminated for an unexcused absence [Doc. No. 35-4, pages 97-101], but Jones was brought back by then-Mayor Jamie Mayo under a Last Chance Agreement [Doc. No. 35-4 pages 67-69]. This agreement provided that Jones must be respectful to all customers, supervisors, management, and other city employees. The agreement also provided that any words or acts of discourtesy or hostility would result in immediate termination.

In January 2018, Jones was involved in an incident which was on tape (without audio) [Doc. 35-15, Notice of Manual Attachment – M.A-1]. On January 27, 2018, Jones arrived at the Transit Office and received a "Friendly Reminder" letter from a Transportation Supervisor for using the wrong radio channel to conduct business. After receiving the reminder, Jones went

into the office where General Manager Marc Keenan ("Keenan") was working. Jones confronted Keenan.

Jones was admittedly loud, raising her voice and talking with her hands [Doc. No. 35-3 page 36]. Keenan stated Jones began shouting at him and began blaming Carolyn Washington for picking on her. Keenan described Jones as "out of control," "belligerent," "speaking loudly," "fussing," "shouting and directing accusations, demands and anger towards management" [Doc. No. 35-4 pages 104-106 Determination Letter].

Jones received a five-day suspension for "personal misconduct." Jones was put on notice that any subsequent violations related to personal misconduct, discourtesy, or hostility, would not be tolerated [Doc. No. 35-4 pages 104-109]. No grievance was filed by Jones. This Court reviewed the video of the incident. Although there was no audio, Jones' actions were consistent with Keenan's description.

The final incident took place on March 15, 2018. This incident was captured by both video and audio [Doc. No. 35-15 Notice of Manual Attachment – M.A-2]. Jones cursed loudly at another employee in front of passengers. In addition to the video and audio, Keenan actually saw Jones in the parking lot shouting and flailing her arms. In both the video and in Keenan's Declaration [Doc. No. 35-7], Jones, in full view of bus passengers, used the words "fuck," "shit," and told co-employee Horace Anthony, Jr. to "bring his ass on." The Court also reviewed the video and audio of this incident and finds it matches the description given by Keenan.

A Pre-Disciplinary Hearing was held on March 20, 2018. It was found at the hearing that Jones committed a Category V violation for discourteous treatment of passengers and/or fellow employees-1st offense, and it was found that Jones committed a Category VI violation for

personnel conduct – 2nd offense.  As a result of these findings, Jones was terminated from her employment with the City, effective March 26, 2018 [Doc. No. 35-4 pages 112-118, March 26, 2018 Determination Letter].  The rationale and/or justifications given by Jones for this incident (as documented in the Determination Letter) defy reason or logic.

Jones filed a grievance and had a hearing on April 18, 2018.  The grievance was denied by Public Works Director, Tom Janway [Doc. No. 35-4 page 119].

## II.     LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

**B.    Motion to Strike**

Prior to ruling on Defendants' Motion for Summary Judgment, Jones' Motion to Strike

**5**

must be addressed. In her motion, Jones asks to strike any references in Defendants' Motion for Summary Judgment to discipline that occurred over three years prior to her March 26, 2018 discharge. These would include the December 2009, January 2010, and the April 2011 incidents. Jones argues these incidents are irrelevant to the proceedings at issue. City and First Transit oppose Jones' request, maintaining Jones' own employment history is relevant, especially as it relates to similar conduct.

Although labeled a Motion to Strike, which deals with redundant, immaterial, impertinent, or scandalous matter, under Fed. R. Civ. P. 12(f), Jones' argument is that the evidence is not relevant. Fed. R. Evid. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable, or less probable, than it would be without the evidence. Evidence of the prior incidents of discipline for similar incidents involving arguments and profanity, are relevant to this case. These incidents make more probable the Defendants' reason for terminating Jones' employment.

Because this evidence is relevant to this proceeding, the Motion to Strike [Doc. No. 40] is DENIED.

### C. Employment Discrimination Claims

Employment discrimination claims under Title VII and the LEDL are analyzed under the same standard. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012). The McDonnell Douglas[1] burden-shifting framework applies. This framework consists of three prongs: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) if the plaintiff

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

can establish a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action; and (3) if the employer articulates a legitimate reason for the adverse employment action, the burden then shifts back to the plaintiff to show that the reason is a pretext. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

### 1. Prima Facie Case

Jones' claim is that she was discriminated against based on her sex. To establish a *prima facie* case, Jones must provide evidence that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016).

The first three prongs are not disputed. The fourth prong is - that Jones was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

Since Jones was replaced by a black female, Jeanette Allen [Doc. No. 35-4], Jones must establish that she was treated less favorably than similarly situated males. She cannot do so. None of the males alleged by Jones to have been treated more favorably are similarly situated.

The Fifth Circuit construes "similarly situated" narrowly, requiring the employee's situation to be nearly identical. *Zeng v. Texas Tech Univ. Health Sci. Ctr. at El Paso*, 836 F.

7

App'x 203, 209 (5th Cir. 2020):

> Employees with different supervisors, who work for different divisions of a company, or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated *Morris*, 827 F.3d at 401.

Additionally, the comparators violation history must be of "comparable seriousness," which refers to the seriousness of the employee's conduct, *Wei-Ping Zeng v. Texas Tech Univ. Health Sci. Ctr. at El Paso*, 2020 WL 1074810 at 11-13 (W.D. Tex. March 4, 2020), affirmed 836 F. App'x 203 (5th Cir. 2020).

Jones identified Riley Smith, Carl Williams, Steve Adams, Willie Newton, James Tatum, and Gerald Shaw as potential comparators. Jones did not provide sufficient evidence to show these were potential comparators. The City and First Transit provided the necessary information as to each potential comparator [Doc. No. 35-1 pages 14-24].

A review of the information provided as to each of these potential comparators shows that none of these are similarly situated. Riley Smith was arrested for a DWI when off duty. His arrest required no discipline. Smith transferred to the Maintenance Construction Division as a painter and returned as a bus operator over a year later. This is not a similar incident.

Gerald Shaw was involved in an altercation with a passenger in March 2013. Shaw was initially terminated, and after a grievance was filed, the discipline was reduced to a five-day suspension. This was a first offense (instead of multiple offenses) and was too remote in time (over 5 years prior) to be considered similarly situated.

Steve Adams was given a five-day suspension for failure to complete a work assignment

as specified and negligence in performance of his duties stemming from his failure to properly secure a wheelchair passenger in October 2017. In August 2018 Adams received a ten-day suspension for second offense failure to complete a work assignment as specified and negligence in the performance of his duties, which also related to a wheelchair passenger. Adams was terminated in February 2019 for missing three days of work without a doctor's excuse. None of these violations are similar to those of Jones.

Carl Williams worked as a janitor/maintenance man, except for driving a bus from September 2019 to March 2020. Williams received a three-day suspension for first offense dishonesty and insubordination in October 2018 after working on a Saturday to install flooring when he was instructed not to do so. This is not similar and not the same job responsibilities as Jones.

James Tatum received a five-day suspension in May 2015 for second offense violation of rules/regulations not specified in other categories and first offense discourteous treatment of passengers, mishandling of MTS funds, failure to complete a work assignment as specified, and negligence in the performance of duties. This was as a result of an incident where Tatum was found to be discourteous to a disabled passenger, allowed a passenger to stand in front of the line while the bus was in motion, failing to stop at a railroad track, and in allowing a passenger to ride for free. These are dissimilar to Jones' violations and too remote in time (over three years prior) to be considered.

Jones claims Willie Newton used vulgarity over the radio on a regular basis, had several accidents, and had been written up over five times without being terminated. Jones was only able to offer proof that she heard Newton use vulgarity over the radio on one occasion. Jones

9

provided no proof that Jones was written up five times, what the write-ups were for, whether Newton had two accidents, the nature of the accidents or any other documentation. As no evidence has been provided to show the violations, Newton is also not a proper comparator.

Since Jones is unable to establish a *prima facie* case of discrimination, the City and First Transit are entitled to summary judgment. However, the Court will also evaluate the other prongs.

### 2. Legitimate Reason for Termination

This Court has found that Jones has not established a *prima facie* case of discrimination. However, even if Jones had established a *prima facie* case, the City and First Transit have articulated a legitimate reason for the adverse employment action. As fully detailed in this ruling, Jones received a five-day suspension for personal misconduct as a result of the January 2018 incident and on March 15, 2018, Jones committed a second offense personal misconduct offense and a violation for discourteous treatment of passengers.

Additionally, Jones' history shows she had three prior personal misconduct violations, which took place in December 2009, January 2010, and September 2012. The 2018 incidents are on video. This Court finds the City and First Transit have articulated a legitimate reason for the adverse employment action.

### 3. Pretext

This Court has found that Jones has not established a *prima facie* case of discrimination and even if she had, the defendants have articulated a legitimate reason for the adverse employment action.

Out of an abundance of caution, this Court will address the pretext issue. Since the

defendants have articulated a legitimate reason for the adverse employment action, the burden would shift back to Jones to show that the reason is pretextual. To do so, the plaintiff must substantiate her claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision, *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). A reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

Jones' only claim is discrimination based on sex. She has provided no evidence to prove sex discrimination was the reason for the termination. In her Opposition, Jones blames all of her problems on Carolyn Washington ("Washington"), the Assistant General Manager of the transit system. Jones argues that Washington dislikes her and through a pattern of harassment, intimidation, bullying, and threats, has intentionally attempted to frustrate Jones and terminate her employment. Although Jones makes the conclusory statement that Washington favored male bus drivers, she has provided no evidence to support this conclusory statement. Jones has the burden of proving the reason given for the termination was false and that sex discrimination was the real reason. Jones has not met this burden. Jones surprisingly argues that the real reason for her termination was in retaliation for filing complaints against her managers Washington and Keenan [Doc. No. 39 page 8]. Lacking in Jones' argument is any tie of her termination to sex discrimination. All harassment and retaliation claims made by Jones were dismissed by this Court on October 24, 2019 [Doc. No. 15].

Jones never attempted to amend her complaint to cure the deficiencies found, and this Court will not allow her to amend them by way of her opposition two years later. Because Jones

11

has not met her burden of proving pretext, both the City and First Transit are entitled to summary judgment.

### D. First Transit

First Transit additionally argues that it is entitled to judgment as a matter of law dismissing Jones' claims against it on the basis it is not an employer of Jones. The City concedes it is Jones' employer. Determining whether a particular entity is an employer is a two step process: (1) the employer must meet the definition of employer; and (2) an employment relationship must exist. *Muhammad v. Dallas Cty. Cmty. Supervision & Corr. Dept.*, 479 F.3d 377, 380 (5th Cir. 2007).

An "employer" under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person…" 42 U.S.C.A. § 2000e(b).

To determine if an employment arrangement exists, courts consider a hybrid economic realities/common law control test. The most important component of this test is the right to control the employee's conduct. When examining the control component, the court focuses on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. The economic realities component of the test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of the employment. *Muhammed*, 479 F.3d at 380.

The City contracts with First Transit to provide management services to the City [Doc. No. 35-6]. The agreement specifically states the City will be the employer and assumes the

employment of all employees, other than First Transit personnel. The agreement also states that First Transit would only compensate its own employees.

The City also has a CBA between the City and the union representing Transit Bus Operators [Doc. No. 35-4 pages 4-25]. First Transit is not a party to this Agreement. Although First Transit oversees the general operations of the City's transit system, the ultimate right of control rests with the City [Doc. No. 35-7 Declaration of Marc Keenan].

The CBA sets forth the City's work hours and schedules for Bus Operators [Doc. No. 35-9]. The City retained ultimate control of the Bus Drivers and any employment actions were not effective until the City's Mayor signed them.

Jones was paid by the City, and First Transit did not provide her any benefits [Doc. No. 35-3, Deposition of Mary E. Jones]. There is simply no material issue of fact showing First Transit is the employer of Jones, and therefore, First Transit is entitled to summary judgment on this issue.

### III. CONCLUSION

For the reasons set forth herein, the Motion to Strike [Doc. No. 40] filed by Plaintiff Mary E. Jones is **DENIED.**

The Motion for Summary Judgment filed by Defendants, City of Monroe and First Transit, Inc. is **GRANTED.**

MONROE, LOUISIANA, this 8th day of November 2021.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**